UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEBAMOFF ENTERPRISES, ET AL.,

    Plaintiffs,

    v.

SNYDER, ET AL.,

    Defendants,

MICHIGAN WINE & BEER
WHOLESALERS ASSOCIATION

    Intervening Defendant.
_____/

Case No. 17-10191

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE STEPHANIE
DAWKINS DAVIS

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT [33], DENYING INTERVENOR'S MOTION FOR SUMMARY JUDGMENT
[34], AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [31]**

Plaintiffs—individual wine consumers (Jack Strike, Jack Schulz, and Richard

Donovan), an individual wine merchant (Joseph Doust), and an Indiana corporation

that operates fifteen alcohol retail stores in Indiana (Lebamoff Enterprises, Inc.)—

filed this 42 U.S.C. § 1983 action to challenge the constitutionality of Michigan

Senate Bill 1088, 2016 Mich. Pub. Laws Act 520 ("2016 PA 520"). They claim that

Defendants—Governor of Michigan Rick Snyder, Attorney General William

Schuette, and Chairperson of the Michigan Liquor Control Commission ("MLCC")

Andrew J. Deloney—have violated their rights under the Commerce Clause and the Article IV Privileges and Immunities Clause of the United States Constitution.

Plaintiffs ask the Court to declare 2016 PA 520 unconstitutional to the extent that it amends M.C.L § 436.1203 to prohibit non-Michigan wine retailers from 1) selling and distributing wine directly to Michigan consumers, and 2) obtaining licenses and engaging in their occupations in Michigan. They seek an injunction prohibiting Defendants from enforcing 2016 PA 520 and requiring them to allow out-of-state wine retailers to distribute wine directly to consumers in Michigan.

## FACTUAL BACKGROUND

The laws governing wine retailing in Michigan were amended by 2016 PA 520 on March 29, 2017. The old laws allowed licensed Michigan retailers, and retailers from other states with similar licenses, to ship wine to Michigan consumers only by using their own employees and not by using a third party-delivery service. M.C.L.A. 436.1203, *effective* from March 25, 2014 to March 28, 2017. The new laws permit certain Michigan wine retailers to sell, ship, and deliver alcoholic beverages directly to Michigan customers by using a licensed third party carrier, but they prohibit out-of-state retailers from shipping to Michigan customers by any means. M.C.L.A. 436.1203. The law thus expanded the shipping rights of Michigan retailers while eliminating the shipping rights of out-of-state retailers.

The MLCC, by way of the Michigan Liquor Control Code, controls and regulates the sale and importation of alcohol through a three-tier distribution system of suppliers, wholesalers, and retailers. Licensed suppliers sell beer, wine, and mixed spirits to licensed wholesalers, who in turn sell these products to licensed retailers. Licensed retailers may only purchase wine from licensed Michigan wholesalers. Licensed retailers then sell alcohol to consumers. The MLCC exercises its powers over the three tiers of distribution to regulate the behavior of market participants. For instance, retailers are forbidden to negotiate volume discounts with wholesalers or purchases on credit. Mich. Comp. L. § 436.1609a(5); Mich. Admin. Code, R, 436.1625(5), 436.1726(4). Michigan also requires wholesalers to "post-and-hold" prices to police against industry favoritism or covert volume discounts. Mich. Admin. Code, R. 436.1726.

## PLAINTIFFS' LAWSUIT

Plaintiffs challenge the new version of M.C.L. § 436.1203(2), as enacted on January 5, 2017. The law permits retailers who obtain specially designated merchant ("SDM") licenses to deliver wine to Michigan consumers using a common carrier, their own vehicle, or a third-party facilitator. M.C.L. §§ 436.1203(3), (12), and (15). These provisions do not apply to Lebamoff Enterprises, Inc., however, because as

an "outstate seller of wine," it is ineligible to become "licensed as a specially designated merchant." M.C.L. § 436.1607(1).

Plaintiff Lebamoff Enterprises, Inc. ("Lebamoff") operates fifteen retail wine and liquor stores—called Cap n' Cork—in the Fort Wayne, Indiana area. Many of Lebamoff's customers live in cities in southwest Michigan and have requested that Lebamoff ship wine to them. (Pls.' Ex. 2 at ¶ 2). Lebamoff is unable to do so however, despite being fully equipped to ship and deliver wine. (*Id.* at ¶ 6). Plaintiff Joseph Doust is a wine merchant and one of the co-owners of Lebamoff Enterprises. Plaintiffs Richard Donovan, Jack Strike, and Jack Schulz are Michigan wine consumers who wish to be able to order wine from out-of-state retailers. They prefer to order wine on the internet, and they allege that many of their desired vintages are not available in the Michigan market. (Pls. Ex. 5, 6, & 7).

## PROCEDURAL HISTORY

Plaintiffs filed a Complaint [1] on January 20, 2017 and an Amended Complaint [5] on February 6, 2017.

On March 17, 2017, the Michigan Beer & Wine Wholesalers Association moved, unopposed, to intervene as a defendant. The Court entered an Order permitting intervention [13] on April 6, 2017.

Plaintiffs filed a Motion for Summary Judgment [31] on February 28, 2018. Intervenors and the original Defendants filed Motions for Summary Judgment [33, 34] on April 2, 2018. The motions have been fully briefed, and a hearing was held before the Court on September 6, 2018.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Defendants bear the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that Plaintiffs lack evidence to support an essential element of their case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiffs cannot rest on the pleadings and must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87. Plaintiffs must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *see also United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).

# ANALYSIS

## A.

The Commerce Clause gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const., art. I, § 8, cl. 3. The United States Supreme Court has "interpreted the Commerce Clause to invalidate local laws that impose commercial barriers or discriminate against an article of commerce by reason of its origin or destination out of state." *C & A Carbone, Inc., v. Town of Clarkstown*, N.Y., 511 U.S. 383, 390 (1994). Relatedly, the Commerce Clause "encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. The Beer Institute, Inc*., 491 U.S. 324, 326 n.1 (1989). The dormant Commerce Clause prevents states from "unjustifiably [] discriminat[ing] against or burden[ing] the interstate flow of articles of commerce." *Or. Waste Systems, Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 98 (1994).

The dormant Commerce Clause inquiry is two-fold. First, the Court must determine whether the statute at issue "directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338

(2008); *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010). Plaintiffs bear the burden of showing that Michigan's law is discriminatory. *Id*.

If Plaintiffs prove that the law discriminates against interstate commerce, the law "will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable alternatives." *Dep't of Revenue of Ky.,* 553 U.S at 338; s*ee also Or. Waste Systems*, 511 U.S. at 100. If the defendant fails to meet its burden at this stage of the inquiry, the law is upheld "unless the burden it imposes upon interstate commerce is clearly excessive in relation to the putative local benefits." *Int'l Dairy Foods Ass'n*, 622 F.3d at 644 (citations and quotation marks omitted); *see also Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 449 (6th Cir. 2009) ("Protectionist laws are generally struck down without further inquiry, because absent an extraordinary showing the burden they impose on interstate commerce will always outweigh their local benefits.") (Citations omitted).

## B.

Plaintiffs have met their burden of proving that the regulatory system created by 2016 PA 520 discriminates against interstate Commerce. The new statute permits only those who "hold a specially designated merchant license located in this state" to use a common carrier to ship to consumers in Michigan. 2016 PA 520 § 203(3). Though Defendants argue that Plaintiffs have every right to open a retail location in

Michigan and ship from that store while maintaining their Indiana residency, courts have "viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere." *Pike v. Bruce Church, Inc*., 397 U.S. 137, 145 (1970). In 2005, the Supreme Court ruled that Michigan and New York laws permitting direct shipment of wine from in-state wineries, but forbidding the same from out-of-state wineries, violated the Commerce Clause. *Granholm v. Heald*, 544 U.S. 460 (2005). Michigan and New York both argued in *Granholm* that excluding out-of-state wineries from selling directly to their consumers unless they had a physical presence in the state was nondiscriminatory because wineries need only open up an in-state storefront. The Court rejected the states' argument, referencing the "prohibitive" costs of establishing brick-and-mortar distribution centers in states that require retailers to do so. *Id*. at 475.

Defendants argue that a ruling for the Plaintiffs would allow Lebamoff to do what no Michigan retailer may do: ship wine to Michigan consumers that has not passed through the Michigan three-tier system. The dormant Commerce Clause is enforced against states, however, and the constitutionality of state action is of primary concern in this case. The governing question, therefore, is whether Michigan is permitted to enforce a statute that explicitly denies out-of-state retailers a privilege

available to their in-state competitors. The answer at this stage must be no, for "[s]tate laws that discriminate against interstate commerce face a 'virtually per se rule of invalidity." *Granholm*, 544 U.S. at 476 (quoting *Phila. v. New Jersey*, 437 U.S. 617, 624 (1978)).

Michigan departed from a hermetically-sealed three-tier system when it chose to permit its wine retailers to join the digital marketplace and engage in direct shipping to customers. The State created a market for Michigan consumers that implicated interstate commerce in a manner above-and-beyond that of a traditional three-tier system. These same laws then closed off this Michigan-sized portion of American interstate commerce to out-of-state competition. State laws that so favor in-state business presumptively violate the dormant Commerce Clause because they undermine "strong federal interests in preventing economic Balkanization." *Bacchus Imps. v. Dias*, 468 U.S. 263, 276 (1984) (finding that a tax exemption for an indigenously produced Hawaiian brandy, *Okolehao*, skewed competition within the liquor market and therefore was subject to the Commerce Clause).

## C.

Because this case concerns the regulation of alcohol, the Court must undertake an additional step in its analysis before determining whether Defendants meet their burden on the second prong of the Commerce Clause test. The Court must determine

"whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 276 (1984). Section Two of the Twenty-first Amendment provides, "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2.

Courts have interpreted the Amendment "to allow states to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use." *Granholm*, 544 U.S. at 484; s*ee also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986) ("[T]he Twenty-first Amendment and the Commerce Clause 'each must be considered in light of the other and in the context of the issues and interests at stake in any concrete case." (quoting *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 332 (1964)). The *Granholm* Court rejected the two states' contention that Section Two of the Twenty-first Amendment immunized laws that discriminated against out-of-state wineries. "The Amendment did not give States the authority to pass non-uniform laws in order to discriminate against out-of-state goods." *Granholm,* 544 U.S. at

484-85. The Court went on to reiterate its holdings in *Bacchus*, *Brown-Forman*, and *Healy* that "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause." *Id*. at 487.

The question here is whether discrimination against interstate commerce on the retail tier—as opposed to the producer tier at issue in *Granholm*—is forbidden by the Commerce Clause or sanctioned by the Twenty-first Amendment.

Courts have answered this question in different ways. In *Siesta Village Market, LLC v. Granholm*, 596 F.Supp.2d 1035 (E.D. Mich. 2008), this court declined to distinguish between retailers and producers when determining the constitutionality of a very similar Michigan statute, and ultimately enjoined the enforcement of Michigan laws that discriminated against out-of-state wine shippers. Following this decision, the Michigan legislature repealed the problematic provisions of the statute and the Court vacated the decision as moot.

By contrast, the Second Circuit declined to interpret *Granholm* as authorizing a Commerce Clause challenge to a New York state wine retail shipment law that privileged in-state retailers. *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2nd Cir. 2009). The Eighth Circuit went further and held that residency requirements for wholesalers are permissible under the Commerce Clause. *S. Wine and Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799 (8th Cir. 2013). Implicit to

both the Second and Eighth Circuit's decisions was their refusal to extend the logic of *Granholm* from the producer tier to the retailer tier.

This bright-line distinction between producer and retailer tiers is incompatible with Sixth Circuit precedent. In *Byrd*, the Sixth Circuit found that Tennessee residency requirements for the owners of retail businesses applying for alcoholic beverage licenses did in fact violate the Commerce Clause, and it embraced the Fifth Circuit's interpretation of *Granholm* as "reaffirming the applicability of the Commerce Clause to state alcohol regulations, but to a lesser extent when the regulations concern the retailer or wholesaler tier as distinguished from the producer tier, of the three-tier distribution system." *Byrd v. Tenn Wine and Spirits Retailers Ass'c*, 883 F.3d 608 (6th Cir. 2018), *cert. granted,* (U.S. Sep. 27, 2018) (No. 18-96), (quoting *Cooper v. Texas Alcoholic Beverage Comm'n*, 820 F.3d 730, 743 (5th Cir. 2016)).

The Sixth Circuit held that whether the Twenty-first Amendment saves a dormant commerce clause violation will depend on "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies." *Id*. at 621-22. Put another way, "[d]istinctions between in-state and out-of-state retailers and

wholesalers are permissible only if they are an inherent aspect of the three-tier system." *Id*. This is the test the Court applies to Michigan's retail wine shipment laws.

Michigan fails this test because it cannot demonstrate that permitting in-state retailers to ship directly to consumers while denying out-of-state retailers the right to do the same is inherent to its three-tier system. Michigan retains its Twenty-first Amendment powers to maintain a closed three tier system, just as it remained free after *Granholm* to prohibit wineries from shipping directly to consumers. But when it starts carving exceptions out of that system, it must do so without resorting to economic protectionism. The State's Twenty-first Amendment powers do not extend so far as to spare protectionist laws from the Commerce Clause. *See Granhom*, 544 U.S. at 487 (2005) (holding that "regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause."). A law favoring local businesses that strays too far from the protection of the Twenty-first Amendment must withstand a Commerce Clause challenge on its own merits.

## D.

Defendants therefore must defend their regulatory regime on the second prong of the dormant Commerce Clause analysis. A facially discriminatory law will only be upheld if it "advances a legitimate local purpose that cannot be adequately served

by reasonable alternatives." *Dep't. of Revenue of Ky.*, 553 U.S. at 328. Given that simply outlawing retail wine shipping without providing an exception for SDMs would likely accomplish the following four objectives, and that the State has operated a non-discriminatory retail regime in the past, Defendants seem foreclosed from meeting their burden.

Nevertheless, Defendants argue that four legitimate local purposes will save wine retailer-delivery discrimination from a Commerce Clause challenge. The Court considers each in turn.

### 1. Administrative Overburdening

The State argues that Michigan cannot feasibly regulate a nationwide market of wine retailers. The MLCC opines that 338,000 retailers nationwide could be eligible for licenses and references the heavy burden that licensing and regulating out-of-state wine retailers will entail. (Defs.' Ex. B, at ¶ 13). Plaintiffs argue that only a tiny fraction of these retailers will in fact apply for a license, as was the case in New Hampshire, and that the costs of running a shipping business will prevent the market from becoming saturated with out-of-state retailers. (Pls.' Ex. 14 & 15). It is impossible to know just how many applicants an expanded SDM license eligibility would create, but the State has not demonstrated that no reasonable alternatives exist to prevent administrative overflow. The MLCC could for instance

tighten regulations with other non-discriminatory requirements or increase its application fees. The State cannot justify restricting market access to local businesses merely by pleading regulatory frugality and pointing out that Michigan has fewer potential licensees than the whole country.

## 2. *Youth Access*

The State argues that licensing out-of-state retailers to deliver wine would substantially increase the risk of minors obtaining alcohol. Defendants provide evidence that out-of-state direct shippers have sold more wine to minors during investigatory control sales. (Defs.' Ex. D at ¶ 18; Ex. C at ¶ 14). The *Granholm* Court already considered and rejected the justification of preventing youth access for winery direct shipments, finding that the states needed not only to show that a problem existed but also that alternative mechanisms could not solve that problem. *Granholm*, 544 U.S. at 489-91 (finding that online wine shipping is an unattractive means for minors to procure alcohol, and noting less restrictive alternatives to foreclosing youth access to wine).

Preventing underage wine sales fails as a justification because the point-of-enforcement is on the delivery end. Michigan law provides that wine must be shipped in a specially marked package, and that only someone at least 21 years of age can accept delivery. M.L.C. 436.1203(15). Third party shippers must be

approved by the MLCC and must keep records of their shipments for inspection. M.L.C. 436.1203(20)-(21). Michigan does not advance any theory on how its wine retailing websites better screen out minors than their out-of-state rivals, and in fact both websites would be equally accessible to Michigan officials seeking to investigate underage sales, as would both company's deliveries (presumably accomplished by the same common carrier). Further, as Plaintiffs argue, there are many forms of leverage the state can hold over out-of-state retailers short of the threat of property abatement. Bonds can be required from retailers where the MLCC sees fit, and, along with the SDM license itself, subject to forfeiture where necessary. The *Granholm* Court found that Michigan failed in 2005 to make the "clearest showing" that was necessary to justify discrimination. *Granholm*, 544 U.S. at 489-91 (quoting *C&A Carbone, Inc*., 511 U.S. at 393). The state has not adequately demonstrated that replacing wineries with wine retailers has made a significant enough difference.

### 3. Tax Collection

The State argues that collecting Michigan taxes from out-of-state retailers would be unworkable. Defendants base this conclusion off the MLCC's experience taxing out-of-state wineries. Direct shipper licensees pay the excise tax directly to the MLCC, but the Commission believes itself to be unable to collect the full taxes

owed on such transactions. (Defs.' Ex. E). Defendants advance evidence that out-of-state wineries have disproportionately failed to timely file required tax documentation and have routinely underpaid taxes. *Id*. The fact that much of Michigan's evidence comes from winery direct shipping suggests that the State's problem lies with *Granholm* itself, a problem that this Court is not in a position to remedy.

Indeed, the Court in *Granholm* found that there were reasonable alternative methods available to collect taxes without burdening interstate commerce. Michigan can simply require retailers to post a bond for taxes, as it already does in certain circumstances, and condition continued licensing on proper payment of taxes. *Granholm*, 544 U.S. at 491 ("If licensing and self-reporting provide adequate safeguards for wine distribution through the three-tier system, there is no reason to believe that they will not suffice for direct shipments."); *see also* Mich. Comp. L. 436.1801 on current wine retailing bond requirements. Indeed, tax collection is substantially less of a justification now than it was in 2005, when the nexus requirements of *Quill Corp v. North Dakota*, 504 U.S. 298 (1992) were still in effect. *South Dakota v Wayfair*, 138 S. Ct. 280 (2018) overruled *Quill* and allowed states to collect taxes from out-of-state retailers delivering goods to their citizens "as if the seller had a physical presence in the states." *Id*. Michigan has every right to demand

out-of-state sellers collect taxes from its Michigan customers and remit those taxes to the state.

### 4. Product Safety

Michigan argues that permitting out-of-state retailer delivery would defeat the MLCC's product safety function. The only U.S.-specific research the defendant cited for this argument was an article that concluded that fake alcohol is not a large problem in the U.S. precisely because of the efficacy of state and federal regulation. *See* Robert M. Tobiassen, *The Fake Alcohol Situation in the United States: The Impact of Culture, Market Economics, and the Current Regulatory System*, CENTER FOR ALCOHOL POLICY (2014) at https://www.centerforalcoholpolicy.org/wp-content/uploads/2015/04/The_Fake_Alcohol_Situation_in_the_United-States_compressed.pdf (last visited Sep. 24, 2018). The one case of unsafe retailed wine reported by the article was that of certain wines containing diethylene glycol, that were recommended for recall by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives. *See Banfi Products Corp. v. United States*, 41 Fed. Cl. 581 (1998). While the success of regulation should never undermine the regulation that made it possible, Michigan has not demonstrated that the regulatory efforts of the Federal Government and other state governments is so deficient as to require Michigan to keep all retail shippers within its state lines. Defendants have not

demonstrated that they lack alternative mechanisms (such as collecting wine samples or barring the shipment of suspect wines) for achieving their goal of product safety. The product-safety justification thus lacks merit.

## E.

Defendants have not proven that the discriminatory elements of 2016 PA 520 advance a legitimate local objective that can only be met through discriminating against out-of-state commerce. Michigan is therefore operating an unjustifiable protectionist regime in its consumer wine market, a privilege unsanctioned by the Twenty-first Amendment and forbidden by the dormant Commerce Clause.

## REMEDY

Plaintiffs urge the Court to remedy the unconstitutionality of 2016 PA 520 by extending the benefits of the bill to out-of-state retailers. The Sixth Circuit has held that district courts have broad discretion in fashioning the terms of injunctive relief, including in wine commerce clause cases.

> When a district court finds that a statute is constitutionally defective, the court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion.

*Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 435 (2008) (citations omitted).

Extension is generally preferred over nullification. *See Welsh v. United States*, 398 U.S. 333, 361 (1970) ("Where a statute is defective because of under-inclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion.") Therefore the Court chooses to extend the provisions to Plaintiffs.

## CONCLUSION

With an aim to creating minimal interference in the complex and interdependent statutory infrastructure of Michigan alcohol, the Court holds that 2016 PA 520 is unconstitutional insofar as the Act, in conjunction with MLCC Section 436.1607 (restricting SDM licensees to Michigan entities) precludes out-of-state sellers of wine from shipping to Michigan customers. The law as amended by the Act—which allows sellers of wine who hold a "specially designated merchant license located in this state…to use a common carrier to deliver wine to a consumer in this state…"—may remain unaltered insofar as it permits otherwise compliant out-of-state wine retailers to either apply for and receive SDM licenses or ship to Michigan customers with comparable out-of-state licenses. Finding the Commerce Clause sufficient grounds for relief, the Court declines to reach Plaintiffs' Privileges and Immunities claim.

The Court finds that there are no genuine issues of material fact which would preclude judgment as a matter of law in this case that 2016 Public Act 520—read in conjunction with MLCC Section 436.1607—violates the dormant Commerce Clause.

Consequently, Plaintiffs' Motion for Summary Judgment [31] **IS HEREBY GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' and Intervenor's Motions for Summary Judgment [33, 34] are **DENIED**.

For the reasons stated herein, the Court **DECLARES** that Michigan's wine retail shipping laws are unconstitutional insofar as they forbid out-of-state retailers from shipping wine to Michigan customers.

Therefore,

**IT IS HEREBY ORDERED** that Defendants Michigan Governor Rick Snyder and Michigan Attorney General Bill Schuette, in their official capacities, and the State of Michigan **ARE PERMANENTLY RESTRAINED AND ENJOINED** from enforcing provisions of M.C.L. §§ 436.1607 and 436.1203 to preclude out-of-state retailers of wine from shipping through interstate commerce to Michigan customers. This order shall not prevent the State of Michigan from collecting all

appropriate taxes due on the sale of the wine or from requiring licenses and permits for direct interstate sales and deliveries.

**SO ORDERED**.


s/ Arthur J. Tarnow

Arthur J. Tarnow
Dated:  9/28/2018                              Senior United States District Judge